IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARTIN LEWIS BLACK,            )
                               )
            Petitioner,        )
                               )
       v.                      )    1:08CV042
                               )
THEODIS BECK, Secretary of the )
Department of Correction,      )
                               )
            Respondent.        )

**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On January 11, 2006, Petitioner was convicted after trial by jury in Hoke County Superior Court of first-degree rape and taking indecent liberties with a child. He was sentenced to consecutive terms of 336-413 months and 21-26 months imprisonment in cases 04-CRS-50772 and -50773. Petitioner appealed, and the North Carolina Court of Appeals issued an unpublished opinion finding no error on March 20, 2007. On November 8, 2007, the North Carolina Supreme Court dismissed Petitioner's subsequent notice of appeal and denied discretionary review. Notably, Petitioner sought no collateral review in the state courts before filing the pro se federal habeas petition now before this Court.

### Facts

In its unpublished opinion, the North Carolina Court of Appeals summarized the facts as follows:

> In August 2003, [the victim's][] maternal aunt called the Hoke County Department of Social Services ("DSS") and reported that her 12-year-old niece Olivia had just given

> birth to a child. Olivia's birth date is 7 December 1990, while her son Andrew's birth date is 18 August 2003. Evidence at trial indicated that Olivia is learning disabled, with one test suggesting a I.Q. of 67. DSS place Olivia and Andrew into the aunt's custody pending an investigation.
>
> Detective David Stewart of the Hoke County Sheriff's Department began the investigation and spoke with the aunt. Following Detective Stewart's deployment to Iraq, Detective Michael Hallman of the Hoke County Sheriff's Department took over the investigation. As a result of his review of Detective Stewart's case file, Detective Hallman interviewed the aunt and obtained a search warrant for defendant's DNA. Afterward, based on conversations with Detective Hallman, the aunt took Olivia and Andrew for DNA testing. LabCorp compared the DNA samples provided by Olivia, Andrew, and defendant and determined that there was a 99.98% chance that defendant was Andrew's father. An investigator with the District Attorney's Office obtained defendant's birth certificate, which revealed that he had a birth date of 16 December 1979.

State v. Black, No. COA06-620, 182 N.C. App. 347, 641 S.E.2d 867 (Table), 2007 WL 817447, at *1 (N.C. App. Mar. 20, 1007).[1]

**Petitioner's Claims**

Petitioner raises four claims for relief in this Court. First, he claims that the trial court committed plain error by admitting the contents of the search warrant in violation of the Sixth and Fourteenth Amendments. Second, he contends that he received ineffective assistance of counsel, again in violation of the Sixth and Fourteenth Amendments. Third, he claims that the trial court erred in admitting a certified copy of his birth certificate, and fourth, he claims that court also erred by including dictionary definitions of "lewd" and "lascivious" in its

---

[1] The North Carolina Court of Appeals used the pseudonyms "Olivia" and "Andrew" throughout its opinion to protect the identities of the children.

-2-

Case 1:08-cv-00042-JAB-RAE   Document 11   Filed 06/23/08   Page 2 of 14

jury instructions, once more in violation of the Sixth and Fourteenth Amendments. Respondent seeks summary judgment as to all of Petitioner's claims.

## Discussion

In this case, Petitioner's habeas claims face two very different but equally fatal procedural problems. First, by neglecting to raise claims one and three at trial, Petitioner failed to exhaust his state court remedies. As such, these claims are now procedurally barred. Second, even if this Court considers Petitioner's contentions on their merits, it cannot grant habeas relief unless Petitioner shows that the North Carolina Court of Appeals' earlier decision as to these claims was either contrary to clearly established federal law or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). No such showing has been made in this case regarding any of Petitioner's four claims. The Court will now examine each of these problems in greater detail.

### Procedural Bar

In order to receive habeas relief on any claim, a petitioner must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). The rationale for this requirement is axiomatic.

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

-3-

O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). In a two-tiered appellate system like North Carolina's, "one complete round" includes not only direct appeal to the State's intermediate appellate court, but also the opportunity to petition for discretionary review in the North Carolina Supreme Court. See id. Claims not raised in a petition to the state's highest court are non-exhausted and, therefore, procedurally barred from federal habeas review. Id. Moreover, failure to exhaust state law remedies will result in the claims being procedurally barred from federal review if, upon return to the state courts, those courts would find that the claims are procedurally barred. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)(citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)). North Carolina General Statute § 15A-1419 imposes just such a mandatory procedural bar for claims that could have been presented on appeal or in a prior motion for appropriate relief. Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001).

In the present case, claims one and three, Petitioner's objections to the trial court's admission of the search warrant and his birth certificate, are procedurally barred for failure to exhaust state court remedies. While Petitioner raised both of these claims on direct review, the North Carolina Court of Appeals noted that defense counsel did not object to the introduction of either the contents of the search warrant or the certified copy of Petitioner's birth certificate at trial. Petitioner has not demonstrated otherwise. Therefore, Petitioner waived his right to

normal appellate review and his claim is procedurally defaulted before this Court. An appellate court's plain error/fundamental miscarriage of justice review does not serve to excuse a petitioner's failure to properly preserve alleged error for review either in that court or for purposes of habeas review. See Daniels v. Lee, 316 F.3d 477, 487-88 (4th Cir. 2003); Reid v. Warden, Central Prison, Raleigh, N.C., 708 F. Supp. 730 (W.D.N.C. 1989); Seymour v. Walker, 224 F.3d 542 (6th Cir. 2000). Rather, the availability of plain error review, like that undertaken by the North Carolina Court of Appeals in the present case, simply "encourage[s] the state appellate courts to apply their procedural rules in a way that exhibits an awareness of the fundamental fairness of the criminal process." Davis v. Allsbrooks, 778 F.2d 168, 176 (4th Cir. 1985). Once this fairness review is completed, a petitioner has no further recourse. Thus, Petitioner's first and third claims for relief are procedurally defaulted.

**Review on the Merits**

Notwithstanding the failure to exhaust state court remedies, a federal court may consider such claims if they are without merit and can also be dismissed as such. 28 U.S.C. § 2254(b)(2). When this Court considers Petitioner's claims on their merits notwithstanding the procedural bar, it must defer to the North Carolina Court of Appeals' earlier decision on the merits. Significantly, the same highly deferential standard of review, enunciated in 28 U.S.C. § 2254(d), applies to both defaulted and non-defaulted claims. Under that standard, habeas relief cannot be

-5-

granted in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 413. "Unreasonable" is not the same as "incorrect" or "erroneous," and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-410. A holding is not reasonable simply because precedent written by one of the Nation's jurists agrees with it. Id. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, all of Petitioner's claims were raised in the North Carolina Court of Appeals and were denied on their merits in that court's unpublished opinion. Therefore, the strict standards for

-6-

Case 1:08-cv-00042-JAB-RAE   Document 11   Filed 06/23/08   Page 6 of 14

review set out above apply to the evaluation of each of these claims.

## Claim One

Petitioner first argues that the trial court committed plain error when it allowed the State to introduce the contents of the search warrant and affidavit, in violation of the Sixth and Fourteenth Amendments.[2] The court of appeals recognized that absent good cause, the introduction of such hearsay evidence violated a defendant's right to confront his accusers and right to cross-examination. It, however, found the error to be harmless.

The search warrant affidavit stated, in part:

> [T]hat in or about November 2002, [Olivia's] mother in return for crack cocaine rented out her daughter [Olivia], approximately 11 years of age, for sex. Investigation has revealed that the victim did engage in sexual intercourse with [defendant], approximately 22 years of age. As a result of the sexual intercourse the victim became pregnant and approximately eight (8) months and one (1) week later, ..., the victim had [Andrew].

Black, 2007 WL 817447, at *3.

The court of appeals dealt with Petitioner's prejudice argument as follows:

> Defendant contends that he was prejudiced because the affidavit's reference to defendant's "sexual intercourse" with Olivia was the only evidence of vaginal penetration. To the contrary, "evidence ... disclosing a subsequent pregnancy is admissible as tending to prove penetration, an essential element of the crime of forcible rape." State v. Stanton, 319 N.C. 180, 185, 353 S.E.2d 385, 388 (1987). Defendant argues, however, that "[i]n this age of medical advancement, vaginal

---

[2]Petitioner also attempts to inappropriately raise errors of state law. A federal habeas corpus court may only examine a conviction for violations of the United States Constitution. Smith v. Moore, 137 F.3d 808 (4th Cir. 1998).

-7-

> intercourse is no longer the only way in which a female can become pregnant." We note that under "plain error" review, we must be convinced that absent the error, the jury probably would have acquitted defendant. Duke, 360 N.C. at 138-39, 623 S.E.2d at 29-30. We do not believe that, in the absence of the affidavit, it is probable that the jury would have concluded that the State failed to meet its burden of proof because a <u>12-year-old</u> <u>girl</u> theoretically could have become pregnant by defendant through some medical means other than sexual intercourse.
>
> Defendant also argues that the affidavit's suggestion that Olivia was "rented out" for sex by her mother in exchange for crack was "extraordinarily prejudicial." Although no one can deny the extraordinarily troubling nature of this statement, the evidence presented at trial was undisputed for each element of the offenses of first degree rape and indecent liberties with a child. As a result, even if the information about the mother's conduct had been omitted, we cannot conclude that there is any reasonable probability that the jury would have failed to convict defendant.

<u>Id.</u>, 2007 WL 817447, at *4 (emphasis added).

Respondent argues that the North Carolina Court of Appeals' finding of harmless error is entitled to deference. The Court agrees. Petitioner fails to show any substantial injurious effect caused by the search warrant affidavit in light of the other overwhelming evidence. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>see</u> <u>also</u> <u>Fry v. Pliler</u>, ____ U.S. ____, 127 S.Ct. 2321 (2007)(<u>Brecht</u> standard applies even if state court found or applied the harmless beyond reasonable doubt standard of <u>Chapman v. California</u>, 386 U.S. 18 (1967)). The Court also agrees with Respondent that there was no error, even if the <u>Chapman</u> standard were to be employed.

**Claim Two**

Petitioner next contends that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. Specifically, he claims that "[t]rial counsel failed to object to States [sic] exhibit (9) as a self authenticating document and to the introduction of the contents of the search warrant to the prejudice of defendant." (Pet. p. 7.) Exhibit 9 refers to a certified copy of Petitioner's birth certificate.

Allegations of ineffective assistance of counsel are evaluated using a two-part test:

> In order to establish an ineffective assistance of counsel claim . . . [a petitioner is] required to establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [citing Strickland v. Washington, 466 U.S. 668, 688 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.
>
> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689, 104 S.Ct. 2052. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted).
>
> Similarly, in evaluating whether the defendant has shown actual prejudice from any such deficient performance, it is insufficient for the defendant "to

> show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693, 104 S.Ct. 2052. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S.Ct. 2052.

Fisher v. Lee, 215 F.3d 438, 446-447 (4th Cir. 2000). Furthermore, mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue. Green v. Johnson, 160 F.3d 1029 (5th Cir. 1998).

For the reasons stated by the state court, defense counsel's failure to object to the introduction into evidence of Petitioner's birth certificate and the contents of the warrant clearly fails to qualify as prejudicially deficient under the above test. Like Petitioner's first claim, the North Carolina Court of Appeals addressed this issue at length on direct appeal, and Petitioner produces no evidence that the state court's decision was contrary to established federal law or was based on an unreasonable interpretation of the facts as required under 28 U.S.C. § 2254. In fact, the record in this case fully supports the state court's finding that there is no reasonable probability that counsel's alleged errors affected the outcome of Petitioner's case. That court noted that

> Defendant has never disputed that his date of birth is 16 December 1979, as stated on Exhibit 9. Indeed, the judgment filed in this case identifies that date as defendant's birth date. The record contains no indication that had defendant's counsel objected, the

-10-

>     State would have been unable to proved defendant's date
>     of birth.

Black, 2007 WL 817447, at *3.

The evidence as to the search warrant and its accompanying affidavit is equally uncompelling. As discussed regarding Claim One, Petitioner has not shown that counsel's failure to seek exclusion of the affidavit materially prejudiced him in any way in light of the undisputed evidence regarding Andrew's paternity and the relative ages of his parents. Furthermore, the state court noted that, because "counsel specifically referenced the statement in the affidavit regarding the mother's conduct," he "may have had a strategic reason for failing to object, such as a desire to shift the focus of the jury from the defendant to Olivia's mother." Id. at *12. Such strategic choices, even if ultimately unsuccessful, generally do not render counsel ineffective. In short, Petitioner has not shown that his counsel made errors, that those errors prejudiced his defense, or that the state court's decision to this effect was in any way unreasonable or erroneous. Therefore, his ineffective assistance claim must be dismissed.

### Claim Three

In his third claim, Petitioner alleges that the trial court committed plain error by allowing the state to introduce a certified copy of his birth certificate, despite defense counsel's lack of objections. Petitioner claims that this was a Sixth Amendment confrontation violation. However, the admissibility of a public record, such as a birth certificate, is merely a state law

-11-

evidence issue not cognizable in federal habeas corpus review. See n.2, supra; United States v. Mendez, 514 F.3d 1035, 1045 (10th Cir. 2008)(citing Crawford v. Washington, 541 U.S. 36, 68 (2004)(public records are not testimonial and, therefore, do not implicate the Confrontation Clause); United States v. Lopez-Moreno, 420 F.3d 420, 437 (5th Cir. 2005)(same). In short, because Petitioner presents no viable constitutional issue, he presents no claim.

Moreover, even if Petitioner had presented a cognizable claim, his plain error allegation, like that in Petitioner's first claim, is procedurally defaulted before this Court.[3] In addition, on the merits, the state court's determination that any error was harmless is entitled to deference. Petitioner fails to show that the North Carolina Court of Appeals erred when it determined that Petitioner was not prejudiced by the introduction of his birth certificate at trial. As noted by that court, Petitioner has not disputed that the age on his birth certificate is his true age. For all of these reasons, Petitioner's third claim merits dismissal.

### Claim Four

In his fourth and final claim, Petitioner contends that the trial court erred in including a dictionary definition of lewd and lascivious in its jury instructions. He specifically alleges that

---

[3] Petitioner also challenges the introduction of "other hearsay evidence" of his date of birth. However, on direct appeal, the North Carolina Court of Appeals found that this vague assignment of error was insufficient to preserve the issue for review. See Black, 2007 WL 817447, at *2 n.2. Therefore, this matter, like the remainder of Claim Three, is procedurally barred for failure to exhaust state court remedies.

-12-

the court so instructed the jury over his objection in violation of his Fifth, Sixth, and Fourteenth Amendment rights.

Respondent correctly identifies the standard of review for a federal habeas corpus court. First, as mentioned earlier, this Court does not review state court convictions for error of state law. Rather, Petitioner must show his federal constitutional rights were violated. See n.2, supra. With respect to jury instructions, the Court must find that the instruction so infected the entire trial that the conviction violated due process. Cupp v. Naughten, 414 U.S. 141, 147 (1973). A mere erroneous instruction does not qualify for relief. Henderson v. Kibbe, 431 U.S. 145, 154 (1977). This case does not come even close to presenting a situation where relief is warranted.

The state court's opinion reflects that,

> [u]sing Black's Law Dictionary, the trial court defined "lewd" as "obscene, lustful, indecent, lascivious or lecherous" and "lascivious" as "tending to invite lust, lewd, indecent, obscene, sexual impurity, tending to deprave the morals with respect to sexual relations."

Black, 2007 WL 817447, at *5. Because it determined that "[t]hese definitions are substantially consistent with those previously employed by [North Carolina's] appellate courts," and Petitioner made "no argument suggesting that the jury was misled or otherwise misinformed" by their use, the court of appeals found no error on direct review. Id.(citations omitted). Not only does Petitioner fail to show any fault with that conclusion, in light of the overwhelming evidence of Petitioner's sexual misconduct, including the undisputed relative ages of Petitioner and Olivia, Olivia's

-13-

pregnancy, and Petitioner's fatherhood of her child, Petitioner cannot show that he was prejudiced at all by the trial court's instructions. He clearly has not shown any error which "so infected the entire trial that the resulting conviction violated due process." Absent such evidence, Petitioner's final claim, like his others, must be dismissed.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (docket no. 4) be granted, that the habeas petition (docket no. 1) be denied, and that Judgment be entered dismissing this action.

                                              /s/ Russell A. Eliason
                                      **United States Magistrate Judge**

June 23, 2008

-14-

Case 1:08-cv-00042-JAB-RAE   Document 11   Filed 06/23/08   Page 14 of 14